PERRY *v.* HODGSON.

No. 6373. June 13, 1929.

*Branch & Howard* and *Colquitt & Conyers,* for plaintiff.
*Bryan & Middlebrooks,* for defendant.

Hill, J. William Joseph Perry, a minor eighteen years of age, by his father and next friend, James A. Perry, brought an action for damages against Dr. F. G. Hodgson. The jury rendered a verdict for the defendant, and the plaintiff excepted to the judgment of the court overruling his motion for a new trial. The Court of Appeals summarized the pleadings in the case as follows: "When plaintiff was a small boy he suffered from a bone infection of the spine, for which he received surgical treatment that arrested the disease and left him with some lameness in his left leg, but with the ability to ride a bicycle or motorcycle, drive an automobile, and do most other things that a normal boy could do. In 1925 the plaintiff had not suffered from the said disease other than a slight limp for six years, the said infection was under control, and he could do the things usually done by a boy of his age. Defendant, whose son was a close friend of the plaintiff, often saw plaintiff, and on one occasion said to him, 'I want to perform a slight operation on you, and straighten your leg. There is no use in your going through life lame.' Two weeks later the defendant repeated the same statement to the plaintiff, and requested that plaintiff's father come to see defendant about the said operation. Plaintiff's father called to see defendant, who said that he had such conversation with plaintiff and that he was very anxious to operate, and stated to plaintiff's father in substance what he had already told plaintiff. Defendant further said 'that he would perform a minor operation by going under the skin and clipping some leaders and muscles, which would straighten plain-

tiff's leg; that he would have plaintiff on crutches in three weeks after the operation and completely well in six weeks.' Defendant had been associated with the surgeon who had treated plaintiff for said affection, and was familiar with his condition. At said interview plaintiff's father told defendant 'that in said operation it would never do to go anywhere near plaintiff's hip joint or the "track" through which said controlled infection drained.' Defendant said that he would not do so, 'that he was just going under the skin and clip some leaders and muscles, and the operation would not require more than twenty to thirty minutes.' After thinking about the matter further, plaintiff's father went to defendant about two weeks later, and told defendant he was afraid of said operation if there was a possibility of involving the hip-joint or said 'track.' Defendant repeated his assurance that neither would be involved. Upon inquiry as to what effect a slight inflammation with which plaintiff was suffering would have on the operation, defendant replied that there was no danger, as he was not going anywhere about the hip-joint or said inflammation. After considering the matter further, plaintiff's father went to see defendant the third time in May, 1925, and, after defendant had repeated in substance the assurances hereinbefore detailed with reference to the character and effect of said operation, contracted with defendant to perform said·operation. The agreement was 'that the operation would only be a minor one, that defendant would only go under the skin and clip the leaders and muscles, and would not go near plaintiff's hip-joint or the "track" aforesaid.' Defendant operated upon plaintiff on July 11, 1925, keeping him in the operating room two hours and fifty minutes, 'during which time plaintiff's father and mother were in said hospital awaiting the results of said operation.' After said operation defendant called plaintiff's father aside and said to him that he, defendant, was greatly disappointed in the results obtained, although he had cut to the capsule of the hip, far deeper than he expected to cut. Plaintiff's father replied: 'If you have gone to the hip-joint, you have ruined the boy.' Defendant said, 'No, I don't think so.' Paragraph 17 of the petition follows in full: 'Plaintiff avers that the act of defendant in cutting as he did to the capsule of plaintiff's hip-joint was a violation of the agreement made by defendant with plaintiff's father in behalf of plaintiff as aforesaid,

was a breach of defendant's duty to plaintiff, and was a trespass and tort upon plaintiff's person.' 'As a result of said tort of defendant,' plaintiff's hip-joint is completely out of the socket, resting loosely against the flesh; the inflammation and infection in plaintiff's body is enormously increased; he is a helpless and hopeless cripple; his condition is progressively growing worse and is without remedy; he suffers, and will continue to suffer, excrutiating pain; he will never be able to do any work,' etc. In his answer the defendant denied the material allegations of the petition, and denied 'that he was negligent in any manner whatsoever in the treatment of the plaintiff, but, on the contrary, avers that the operation which defendant performed upon plaintiff was performed in a skillful, careful, and proper manner, and that plaintiff's present condition is not attributable to any act of negligence on the part of the defendant.'"

On the trial of the case the court admitted, over objection, certain testimony of various surgeons to the effect that the operation performed was recognized by the profession as a proper one, and held· that the evidence was not irrelevant. The Court of Appeals affirmed the judgment of the lower court, and held that it was not error to admit the evidence objected to, and that the charge of the court complained of was not reversible error for any ,reason assigned. The plaintiff in certiorari assigns error upon the decision of the Court of Appeals, upon two grounds, which are as follows:

■ "The case in which said decision was rendered originated .in the city court of Decatur, and was a suit brought by petitioner against the defendant to recover damages resulting from an operation performed upon petitioner by said defendant contrary to the terms of an express agreement between said defendant and petitioner's father. The suit in the city court of Decatur was based upon a trespass growing out of the breach of said express contract and agreement between petitioner's father and said defendant, the agreement in substance, as set out in the petition, being that the defendant was to perform a certain minor operation upon petitioner and was not to perform any other or additional operation than that expressly agreed upon, and that contrary to said express agreement the defendant did perform a further and additional operation, and the one that it was expressly agreed he was not to

perform upon petitioner, and that this resulted in rendering petitioner a hopeless and helpless cripple and invalid. Upon the trial of the case in the city court of Decatur, the court, in charging the plaintiff's theory of the case, charged: 'I charge you, gentlemen, that if a surgeon agrees and contracts with a patient, or with some one authorized to act for him, to operate on the patient's body for a specific thing, or to remedy a specific condition, the surgeon can not, without the consent of the patient, or some person authorized to act in his place, operate for some other thing, or to remedy an additional condition not agreed to in the employment of the surgeon. Such other or additional operation would be considered in law as a trespass upon the person of the patient, unless the surgeon could show that such other or additional operation was necessary to save the life of or prevent injury to the patient, and there existed an emergency in which the consent of the patient or some person authorized to act for him could not be obtained.' The Court of Appeals held, in effect, that the giving of the latter portion of this charge, that is, the portion in which the court stated to the jury, 'unless the surgeon could show that such other or additional operation was necessary to save the life of or prevent injury to the patient, and there existed an emergency in which the consent of the patient or some person authorized to act for him could not be obtained,' constituted error, because the pleadings and evidence in the case did not warrant such instruction, but held in effect that this was harmless error. Petitioner alleges that this ruling of the Court of Appeals is erroneous, and that it is in conflict with the principle decided by this court in the case of *Richmond & Danville R. Co.* v. *White*, 88 *Ga.* 805, 818 (15 S. E. 802), holding that no hypothesis which lies beyond the range of all of the evidence should be given in charge to the jury, and that mischief often results from a disregard of this rule; and the decision of this court in *Central Ga. Power Co.* v. *Cornwell*, 139 *Ga.* 1 (76 S. E. 387, Ann. Cas. 1914A, 880). Petitioner avers that there was no hypothesis presented by the pleadings or evidence in the case justifying the charge of the court complained of, and that the giving of such charge almost inevitably was calculated to mislead the jury and injure the plaintiff's case."

■ "The Court of Appeals also held that the ruling of the trial court in admitting, over plaintiff's objection, the testimony

of various surgeons to the effect that the operation performed was recognized by the profession as a proper one and was proper in the plaintiff's case, was not error as being irrelevant in the case, because the defendant's plea denied the contract sued upon and denied the contract alleged as the basis of the plaintiff's suit, and averred that the operation was performed in a skillful, careful, and proper manner. Petitioner says that this ruling of the Court of Appeals is erroneous, and that it is contrary to the well-settled principles according to the decisions of this court. The plaintiff based his suit, not upon alleged negligence or malpractice of the defendant, but upon the theory of a trespass committed by the defendant in performing an operation contrary to an express agreement, and under the law, if the plaintiff established his contentions, viz., that the operation was performed contrary to an express agreement, it would not matter and could not relieve the defendant of liability, even though such operation, performed contrary to the terms of the express agreement, were performed skillfully and carefully; and if the plaintiff did not establish that there was such an agreement and a violation of it by the performing of an operation contrary to the express terms of the agreement, then the plaintiff could not recover in such case, whether the operation was skillfully and carefully performed or not. The effect of the ruling of the Court of Appeals is that the defendant, by pleading in his answer matter entirely irrelevant to the plaintiff's case as laid in the declaration, is entitled to introduce evidence in support of such irrelevant matter."

The issues in this case are sharply drawn. On the one side it is alleged, and plaintiff's evidence tends to show, that the father of the plaintiff, and the defendant, a surgeon practicing orthopedic surgery, entered into a verbal contract or agreement by which the defendant was to perform a simple surgical operation of cutting just under the skin on plaintiff's hip and severing a leader, or muscle, in order to relieve a certain lameness in one of plaintiff's limbs caused by tuberculosis of the spine. On the other hand the defendant in his answer denies the allegation as to any specific contract, and avers that the operation was performed in a skillful, careful, and proper manner; and his evidence, and that of other surgeons, was to the same effect, and that the operation was proper and necessary. On conflicting evidence the jury returned a

verdict for the defendant. One question to be decided is whether the evidence by the surgeons, who testified as to the operation being necessary, and that it was performed in a skillful, careful, and proper manner, is admissible, and whether the charge of the court on that subject was error under the facts of the case. Undoubtedly, a charge should not be given unless there is evidence to authorize it. *Central Ga. Power Co.* v. *Cornwell,* and *R. & D. R. Co.* v. *While,* supra. In passing upon the grounds of the motion for new trial based upon a lack of evidence to authorize a charge as to an emergency, and whether the additional operation was performed with skill and care, the Court of Appeals said: "While there was no direct evidence that any 'additional operation' was necessary either to save the patient's life or to prevent injury to him, there was evidence to the effect that the operation was proper and necessary; and while it would have been better to omit the charge complained of, yet, looking through the entire record, we are so impressed with the perspicuity and fairness of the charge as a whole, and with the impartial and lucid manner in which the issues in the case were presented to the jury, that we do not believe the jury were confused or misled, or that the plaintiff suffered prejudice."

But we are of the opinion that the charge complained of was confusing and harmful to the plaintiff. The plaintiff's suit is against a surgeon, to collect damages alleged to have resulted from an operation performed by the surgeon upon the person of the plaintiff, contrary to an express verbal agreement, or breach of duty growing out of the relation created by an express contract. In other words, it is a suit based upon a trespass, for performing an operation contrary to an express agreement to perform only a certain minor operation. In Mohr *v.* Williams, 95 Minn. 261 (104 N. W. 12, 1 L. R. A. (N. S.) 439, 111 Am. St. R. 462), it was held: "A surgical operation by a physician upon the body of his patient is wrongful and unlawful where performed without the express or implied consent of the patient. In the absence of such consent, the physician has no authority, implied or otherwise, to perform the same. Consent may be implied from circumstances. . . Plaintiff consulted defendant concerning a difficulty with her right ear. Defendant examined the organ and advised an operation, to which plaintiff consented. After being

placed under the influence of anæsthetics, and when plaintiff was unconscious therefrom, defendant examined her left ear, and found it in a more serious condition than her right, and in greater need of an operation. He called the attention of plaintiff's family physician to the conditions he had discovered, who attended the operation at plaintiff's request, and finally concluded that the operation should be performed upon the left instead of the right ear, to which the family physician made no objection. Plaintiff had not previously experienced any difficulty with her left ear, and was not informed, prior to the time she was placed under the influence of anæsthetics, that any difficulty existed with reference to it, and she did not consent to an operation thereon. Subsequently, on the claim that the operation seriously impaired her sense of hearing and was wrongful and unlawful, she brought this action to recover damages for an assault and battery. It is held: (a) That defendant had no authority to perform the operation without plaintiff's consent, express or implied. (b) That her consent was not expressly given, and whether it should be implied from the circumstances of the case was a question for the jury to determine. (c) That if the operation was not authorized by the express or implied consent of plaintiff, it was wrongful and unlawful and constituted, in law, an assault and battery." Hobbs v. Kizer, 236 Fed. 681 (150 C. C. A. 13); Bennan v. Parsonnet, 83 N. J. L. 20 (83 Atl. 948).

In Rolater v. Strain, 39 Okla. 572 (137 Pac. 96, 50 L. R. A. (N. S.), 880), it was held: "Consent of the patient, either expressed or implied, is necessary to authorize a physician to perform a surgical operation upon the body of the patient. An operation without such consent is wrongful and unlawful, and renders the surgeon liable in damages. Consent may be implied from the circumstances. . . The plaintiff in error advised an operation upon the great toe of the defendant in error's right foot. She consented to the operation upon the express agreement that no bones should be removed. She was placed under an anæsthetic, and the operation performed, and in performing the operation a sesamoid bone was removed. Contending that she did not consent to the removal of this sesamoid bone, and that its removal was wrongful and unlawful, and that her foot was permanently injured by reason of the removal of this bone, she

brought this action for assault and battery. It is held: (a) That the plaintiff in error had no authority to remove a sesamoid bone from the defendant in error's foot without her consent, either expressed or implied. (b) That she did not expressly consent, and whether or not her consent was implied from the circumstances was a question for the jury to determine under all the evidence. (c) That, if the defendant in error did not consent, the removal of this sesamoid bone from her foot was wrongful and unlawful, and constitutes in law a trespass upon her person, and a technical assault and battery." See *Edwards* v. *Roberts,* 12 *Ga. App.* 140 (76 S. E. 1054); Pratt *v.* Davis, 224 Ill. 300 (79 N. E. 562, 7 L. R. A. (N. S.) 609). These cases decide the principle that a suit for trespass is one for breach of duty growing out of a relation created by contract. We so construe this present petition. It being a suit for damages growing out of a trespass alleged to have been committed upon the person of the plaintiff, the issue tried should have been confined to that. The evidence and charge of the court should have been confined to the one issue indicated above. If the operation was performed contrary to the agreement, and injury resulted, then the surgeon would be liable in damages as for a trespass, as there is no evidence to show an emergency or necessity for an additional operation; and therefore, in our opinion, the charge of the court excepted to was erroneous. The charge of the court could tend only to confuse and mislead the jury, and this court has held that in such cases such a charge is error which will require a new trial. *Central Ga. Power Co.* v. *Cornwell,* supra. See 5 Ann. Cas. 303; 8 Ann. Cas. 197.

The issue in this case is: did the parties make the contract alleged in plaintiff's petition? If so, did the surgeon exceed the authority conferred by the contract; and further, did injury result? If the surgeon did exceed his authority, and injury resulted, he is liable for a trespass. If he did not exceed his authority, or injury did not result, he would not be liable. As already indicated, there is no evidence as to an emergency having arisen, after the operation as alleged to have been agreed upon was commenced; and therefore it was error, harmful to the plaintiff, to charge the jury with reference to an emergency, without evidence to authorize it, and whether the additional operation was skillfully performed. This charge, under the facts of the case, could only tend to con-

fuse and mislead the jury, and was therefore harmful to plaintiff, and was error requiring a reversal. Where a surgeon enters into an agreement with a person merely to perform a certain operation, and the surgeon in violation of that contract goes further without an emergency, and performs another operation which is unauthorized by the agreement, or by an emergency necessitating the additional operation, and injury results, he can not relieve himself from liability by pleading and showing skill and care in the additional operation performed. Such additional operation would constitute a trespass, not having been agreed upon by the patient, for which the surgeon would be liable. Whether plaintiff consented to the operation which was performed, or some one authorized to speak for him, and whether plaintiff's consent was implied from the facts and circumstances, were questions for the jury to determine.

Complaint is made because the court admitted the evidence of certain surgeons, over objection on the ground that it was irrelevant and immaterial. The evidence was admissible for the consideration of the jury in determining the amount of damages, if any, for which the defendant might be liable. The evidence tended to show that the operation performed was the usual one in such cases, and that it was necessary, and was performed with skill and care.

*Judgment reversed. All the Justices concur, except*

BECK, P. J., and ATKINSON, J., dissenting. We are of the opinion that the holding of the Court of Appeals was in accordance with the weight of authority, and that it did not err in affirming the judgment of the trial court. But while we concur with the Court of Appeals in their rulings upon the controlling issue in the case, we do not concur in what was said in the second division of their opinion, in reference to the following extract from the charge of the trial court: "Such other or additional operation would be considered in law a trespass upon the person of the patient, unless the surgeon could show that such other or additional operation was necessary to save the life of, or prevent injury to, the patient, and there existed an emergency in which the consent of the patient or some person authorized to act for him could not be obtained." In the same division of that opinion it was said: "While it would have been better to omit the charge complained

of, yet, after looking through the entire record, we are so impressed with the perspicuity and fairness of the charge as a whole, and with the impartial and lucid manner in which the issues in the case were presented to the jury, that we do not believe the jury were confused or misled, or that the plaintiff suffered prejudice." We are of the opinion that this charge was authorized by the evidence and was applicable to the issues in the case.